**Date Signed:**
**April 15, 2016**



SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>SEA HAWAII RAFTING, LLC,<br><br>Debtor. | Case No.: 14-01520<br>Chapter 7<br><br>Re: Docket No. 82 |

### MEMORANDUM OF DECISION ON TRUSTEE'S MOTION FOR SANCTIONS FOR VIOLATION OF THE AUTOMATIC STAY

## I. Background

Chad Barnes was injured while working aboard the M/V Tehani, a vessel owned by Sea Hawaii Rafting, LLC ("SHR"). In 2013, Mr. Barnes filed a suit in admiralty in federal district court (the "USDC Lawsuit").[1] He named as defendants the Tehani, SHR, and SHR's sole member, Kristen Kimo Henry.

The district court to grant summary judgment in Mr. Barnes' favor as to

---

[1] *Chad Barry Barnes v. Sea Hawaii Rafting, LLC, et al.*, (Civil No. 13-00002 ACK-RLP, D. Hawaii). This court takes judicial notice of the record in the USDC Lawsuit pursuant to Fed. R. Evid 201.  Filings in the USDC Lawsuit will be identified as (USDC dkt. ___) and filings in this bankruptcy case will be identified as (Dkt. ____).

liability, holding that he was entitled to maintenance, cure, and wages under maritime law from the date of the accident, July 3, 2012.[2] Mr. Barnes filed several motions for summary judgment on the issue of the amount of the maintenance payment,[3] but the district court denied each such motion, finding that there were genuine issues of material fact concerning the reasonable cost of living for a seaman in Mr. Barnes' locale.[4]

On July 7, 2014, Mr. Barnes filed a motion for partial summary judgment as to unseaworthiness, negligence *per se,* and Jones Act Negligence.[5] But before the motion was heard, Mr. Henry filed a chapter 13 bankruptcy petition and SHR filed a chapter 7 bankruptcy petition.

Mr. Henry's chapter 13 plan confirmation was delayed because he originally listed the Tehani as one of his assets. That meant that Mr. Barnes was a secured creditor (by virtue of his alleged maritime lien on the vessel), so the plan could not be confirmed until resolution of the dispute about the validity and amount of Mr. Barnes' claim.

Mr. Barnes moved for relief from the automatic stay on May 15, 2015, in Mr. Henry's bankruptcy case, to allow Mr. Barnes to proceed with the USDC Lawsuit. On June 22, 2015, this court granted the relief from stay motion, in part. The motion

---

[2] USDC dkt. 44.

[3] USDC dkt. 58, 94 and 157.

[4] USDC dkt. 77 and 120. The third motion (USDC dkt. 157) was withdrawn (USDC dkt. 198).

[5] USDC dkt. 108.

U.S. Bankruptcy Court - Hawaii   #14-01520   Dkt # 157   Filed  04/15/16   Page 2 of 12

was granted to allow the district court "to value to its conclusion" Mr. Barnes' claim. The purpose was to allow the district court to decide the validity and amount of Mr. Barnes' secured claim, because that decision appeared essential to the confirmation of Mr. Henry's chapter 13 plan. This court denied Mr. Barnes' request, however, that he be allowed to enforce his claim (because all of Mr. Henry's creditors were to be paid through the chapter 13 plan).[6]

After some months, the chapter 13 trustee produced a certificate of title showing that SHR, not Mr. Henry, owned the vessel.[7] That meant that Mr. Barnes could only be an unsecured creditor of Mr. Henry's bankruptcy case,[8] paving the way for confirmation of Mr. Henry's chapter 13 plan.[9]

In the meantime, Mr. Barnes filed another motion for summary judgment in the USDC lawsuit.[10] The district court noted that Mr. Barnes had not sought relief from the stay as to SHR and determined that the case would not proceed against Mr. Henry only because the parties were so interrelated.[11]

---

[6] *In re Henry*, Case No. 14-01475, dkt. 84.

[7] *In re Henry*, Case No. 14-01475, dkt. 123.

[8] Bankruptcy Code § 506(a) ("An allowed claim of a creditor secured by a lien on *property in which the estate has an interest* . . . is a secured claim . . . .") (emphasis added).

[9] Mr. Barnes claims that Mr. Henry listed the Tehani on his bankruptcy schedules in order to mislead Mr. Barnes or his attorneys. I disagree. In the first place, Mr. Barnes' briefs in the USDC Lawsuit show that his counsel was aware that the vessel was owned by SHR and not Mr. Henry. (USDC dkt. 149 at 5). Further, Mr. Henry had nothing to gain by erroneously describing the ownership of the vessel. In fact, that error unnecessarily delayed confirmation of Mr. Henry's plan and probably cost him additional attorneys' fees.

[10] USDC dkt. 157.

[11] USDC dkt. 158.

3

Mr. Barnes' counsel apparently realized that his amended complaint was not verified, contrary to the admiralty rules. On July 23, 2015, Mr. Barnes' counsel attempted to correct the defect by filing an affidavit of verification of the first amended complaint.[12] The attempted correction was also defective, and, in any event, it was done after Mr. Barnes had received only partial relief from the automatic stay as to Mr. Henry and before he even sought any relief from the automatic stay as to SHR.

On September 11, 2015, Mr. Barnes filed a motion for relief from the automatic stay motion in the SHR bankruptcy case.[13] On November 25, 2015, this court granted the motion in part. The stay was terminated to allow the district court to determine Mr. Barnes' maritime lien claim against assets of SHR's bankruptcy estate but denied as to enforcement of the lien.[14]

In the USDC Lawsuit, Mr. Barnes' counsel attempted again to correct the missing verification. However, the filing failed to correct the problem.[15]

The district judge directed the parties to address several issues, including how the limited relief from stay in the SHR affected the district court's ability to adjudicate claims against Mr. Henry and the effect, if any, on Mr. Barnes filing a corrected

---

[12] USDC dkt. 159.

[13] Dkt. 31.

[14] Dkt. 64.

[15] USDC. dkt. 184. The errata containing the notary's signature on the affidavit stated that there was only one page, which meant the verified complaint had not been attached to the affidavit when it was signed. The notary, in essence, only verified one page.

4

verification of his amended complaint.[16] Mr. Barnes filed, on December 3, 2015, a memorandum that disagreed with this court's orders lifting the stay because they were susceptible to misunderstanding and requested that the district court proceed on all causes of action, as if no bankruptcy proceeding had been filed.[17] (Notwithstanding Mr. Barnes' disagreement with the relief from stay orders, the district court determined that it would proceed under the orders' restrictions.[18]) In a supplemental brief, Mr. Barnes justified the post-bankruptcy filing of the verifications as a mere "technicality" missing from the amended complaint but necessary for purposes of arresting the Tehani. Mr. Barnes also argued that the limited lifting of the stay in the SHR bankruptcy did not affect the district court's ability to adjudicate the claims. He suggested that the district court should test the effect of the bankruptcy court ruling by arresting the Tehani and waiting to "see what the 9th Circuit says about it."[19]

Mr. Barnes also made yet another attempt to verify the complaint.[20] SHR's bankruptcy trustee responded that the multiple verifications filed by Barnes violated the automatic stay and were void. The trustee also argued that absent verification of the complaint, the district court was without *in rem* jurisdiction over the Tehani.[21]

---

[16] USDC dkt. 185.

[17] USDC dkt. 186.

[18] USDC dkt. 187.

[19] USDC dkt. 188.

[20] USDC dkt. 191.

[21] USDC dkt. 194.

5

Mr. Barnes' counsel also made a new argument. He asserted that the Bankruptcy Code of 1984 was unconstitutional and that the bankruptcy court lacked the constitutional power to restrict the district court from adjudicating Barnes' claim in the absence of Mr. Barnes' voluntary consent.[22]

The district court then heard and decided one of Mr. Barnes' motions for partial summary judgment. The court ruled that the attempts to verify his complaint, after the first amended complaint was filed, were ineffective.  Without a verified complaint, the district court ruled that it lacked *in rem* jurisdiction over the Tehani, and it dismissed all claims against the Tehani.[23] Mr. Barnes initiated an interlocutory appeal from this ruling.[24]

In preparation for trial, the district court ordered the parties to seek further guidance or instructions from the bankruptcy court, in both bankruptcy cases, regarding the extent to which the district court could determine the ultimate liability of the defendants, including whether it could pierce the corporate veil and hold Mr. Henry liable for SHR's liability.[25] SHR's chapter 7 trustee and Mr. Henry filed similar requests for instructions.[26] This court entered an order, on February 17, 2016, that permitted SHR to remain as a nominal defendant for the purposes of adjudicating Mr.

---

[22] USDC dkt. 193.

[23] USDC dkt. 197.

[24] USDC dkt. 201.

[25] USDC dkt. 200; USDC dkt. 197 at 20 n 16.

[26] Dkt. 69; *In re Henry* (Case No. 14-01475), dkt. 140

6

Henry's ultimate liability issue in the district court.[27] The USDC Lawsuit remains pending.

SHR's chapter 7 trustee seeks sanctions against Mr. Barnes and his attorneys, Jay L. Friedheim and John C. Gibson. The trustee argues that they violated the automatic stay and this court's order when they made repeated attempts to perfect a lien against the Tehani and to persuade the district court to disregard the bankruptcy court's orders.[28] Memoranda in support and in opposition to the motion were filed. A hearing on the motion sanctions took place on March 7, 2016. I stated on the record that I found Barnes' attorneys' actions sanctionable but took under advisement the calculation of sanctions.

## II. Standard

The filing of a voluntary bankruptcy petition under 11 U.S.C. § 301 operates as a stay of certain actions against the debtor or property of the estate pursuant to section 362(a) of the Bankruptcy Code.[29] If the automatic stay is violated, a

---

[27] Dkt. 117.

[28] Dkt. 82.

[29] 11 U.S.C. § 362(a) operates as a stay to prevent:

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

* * *

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the

7

bankruptcy trustee may recover damages under 11 U.S.C. § 105.[30]

To recover under section 105, the trustee must show "by clear and convincing evidence that the contemnors violated a specific and definite order of the court."[31] Since the automatic stay is was created by statute and applies, across the board, to all bankruptcy cases, it is a specific and definite court order.[32]

The trustee need not establish that there was bad faith or a specific intent to violate the order. The trustee only needs to show "willfulness" - that the offending party knew of the stay and the offender's actions were intentional.[33] A stay violation "is willful if the creditor knew of the bankruptcy case and acted intentionally in such a way that the stay was violated. The fact that the creditor may have acted in good faith and reasonably believed that its conduct did not violate the stay does not make its conduct not willful."[34]

Under section 105, a trustee can recover damages in the form of attorneys' fees

---

case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title . . . .

[30] "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). 11 U.S.C. § 362(k) is not available here because a trustee is not an "individual" within the meaning of that section. *Havelock v. Taxel* (*In re Pace*), 67 F.3d 187, 193 (9th Cir. 1995).

[31] *Knupfer v. Lindblade* (*In re Dyer*), 322 F.3d 1178, 1191 (9th Cir. 2003) quoting *Renwick v. Bennett* (*In re Bennett*), 298 F.3d 1059, 1069 (9th Cir. 2002).

[32] *Id.*

[33] *Id.*

[34] *In re Cordle*, 187 B.R. 1, 4 (Bankr. N.D. Cal. 1995), citing *Goichman v. Bloom* (*In re Bloom*), 875 F.2d 224, 227 (9th Cir. 1989).

8

and costs as sanctions for civil contempt.[35] This award is not mandatory but discretionary.[36]

III. Discussion

    A.    *Violation of Automatic Stay.*

There is clear and convincing evidence that Mr. Barnes' numerous attempts to verify the amended complaint, in order to create a maritime lien post petition, were in violation of the automatic stay and this court's order.[37] The court granted relief from the automatic stay so the district court could determine whether Mr. Barnes had a valid maritime lien and, if so, in what amount. The court did not grant Mr. Barnes leave to create a maritime lien on the estate's property. In the Ninth Circuit, it is clear that if a plaintiff fails to file a verified complaint, no lien attaches to the vessel, *in rem*.[38] Therefore, Mr. Barnes' attempts to verify the complaint, after the bankruptcy case was filed, violated the automatic stay and this court's order partially lifting the stay.

Mr. Barnes also violated the stay when his counsel, on several occasions, urged the district court to disregard the bankruptcy court's orders. In a memorandum filed on December 3, 2015, Mr. Barnes requested that the district court proceed as if there was no bankruptcy filing because the relief from stay order was susceptible to

---

[35] *In re Pace, 67 F.3d at 193.*

[36] *Id.*

[37] 11 U.S.C. § 362(a)(4) prohibits an act to create, perfect or enforce a lien against property of the estate.

[38] *Madeja v. Olympic Packers, LLC*, 310 F.3d 628, 637 (9th Cir. 2002).

9

misunderstanding. In a supplemental brief filed on December 10, 2015, counsel for Mr. Barnes also urged the district court to act independently "of any pontifications of the court in Bankruptcy" and to test the bankruptcy court's order by arresting the Tehani to "see what the 9th Circuit says about it."[39] Urging a court to ignore the automatic stay and the bankruptcy court's limited relief from the stay is itself a violation of the stay.

Counsel for Mr. Barnes contend that simply fulfilled their duty to be zealous advocates for their client. But the duty of zealous advocacy does not excuse an attorney from the duty to comply with the law.[40] Urging one court to ignore another court's order is not zealous advocacy but mere foolishness.

The chapter 7 trustee asserts counsel for Mr. Barnes violated the stay when counsel argued that the bankruptcy court lacked constitutional authority to restrict the district court from adjudicating Mr. Barnes' claims without his knowing and voluntary consent. This argument is frivolous. The bankruptcy court has constitutional authority to adjudicate claims asserted by creditors against debtors, bankruptcy estates, and their property. The Congressionally-enacted automatic stay, not the bankruptcy court, precludes other courts from deciding those issues. The constitutional issue presented by the case on which Mr. Barnes relied arises only when a debtor or trustee is asserting claims against a nonconsenting third party that do not

---

[39] USDC dkt. 188.

[40] Haw. R. Prof. Cond.- Preamble: A Lawyer's Responsibilities.

10

U.S. Bankruptcy Court - Hawaii    #14-01520    Dkt # 157    Filed 04/15/16    Page 10 of 12

arise under federal bankruptcy law.[41] But a frivolous argument is not necessarily a violation of the automatic stay. I decline to hold that Mr. Barnes' frivolous constitutional argument violated the automatic stay.

B. *Willfulness*

There is no serious dispute that the violations were willful. Mr. Barnes and his counsel knew that the automatic stay was in effect and knew that this court had modified it only in part. Their actions that violated the stay were deliberate, not accidental. Even if they did not intend to violate the stay–an assumption that defies credibility in light of their brazen statements to the district court–their acts were still willful.

C. *Discretionary Factors*

An award of damages under section 105 is discretionary. I will exercise my discretion to refrain from imposing sanctions on Mr. Barnes. There is no indication that Mr. Barnes is personally responsible for what has occurred in this case. Although a client is ordinarily responsible for his attorney's actions, I will not sanction Mr. Barnes. The attorneys, not Mr. Barnes, should pay the price for the attorneys' misconduct.

D. *Calculation of Damages*

The chapter 7 trustee's counsel requested attorneys fees totaling $50,770.97.[42]

---

[41] *Wellness In't Network, Ltd. v. Sharif*, 135 S.Ct. 1932 (2015).

[42] The trustee initially requested fees, GE taxes and costs of $25,831.30 from November 25, 2015, to December 31, 2015, but filed a second declaration requesting additional fees, taxes and costs for January 2016, increasing the total to $40,749.29 (dkt. 100). Thereafter, a third declaration

11

The trustee requested and was permitted additional time to submit supplemental information evidencing voluntary time sheet reductions made to support the request for reasonable fees. Counsel for Mr. Barnes was also given additional time to respond. The fourth declaration of trustee's counsel reduced the request from $50,770.97 to $43,692.39, after taking into account the billing adjustments.[43]

I have carefully and independently reviewed the supplemental documents submitted by both sides and will award the chapter 7 trustee and his professionals the sum of $40,939.50 plus GE tax of $1,929.07 and expenses of $409.16 for a total sum of $43,277.73.[44]

## IV. Conclusion

The chapter 7 trustee's motion for sanctions for violation of the automatic stay is GRANTED. The trustee will be awarded a total of $43,277.73. Counsel for the chapter 7 trustee shall submit an appropriate separate judgment. Mr. Barnes' counsel are to remit payment not later than 30 days after entry of the judgment.

END OF DECISION

---

for fees, taxes and costs incurred in February 2016 adjusted the grand total to $50,770.97. (Dkt.126)

[43] Dkt. 136.

[44] In addition to the reductions suggested by the chapter 7 trustee's counsel, I have reduced the time posted on December 9, 2015, by 0.6 minutes and the time posted on January 22, 2016, by 0.3 minutes, because the services reflected in the time entries do not appear to relate to the sanctionable conduct. This reduces the fees (including GE tax) by $414.66.

U.S. Bankruptcy Court - Hawaii   #14-01520   Dkt # 157   Filed 04/15/16   Page 12 of 12