**Date Signed:**
**May 21, 2018**



SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re | Case No.: 14-01520 |
| | Chapter 7 |
| SEA HAWAII RAFTING, LLC, | |
| Debtor. | Re: Docket No 272, 277, 274, 278, 279, 285, 291, 293, 295, 297 |

## <u>MEMORANDUM OF DECISION ON MOTIONS FOR RELIEF FROM STAY AND BARTON DOCTRINE AND FOR SANCTIONS</u>

This case is at the boundary between maritime law and bankruptcy law. The Ninth Circuit has ruled that I erroneously decided where that boundary lies. Before me are five motions filed in the aftermath of that decision. Prompt decision of the five motions is necessary because the district court has set an expedited trial in a related maritime lien enforcement case.

## BACKGROUND

Chad Barnes was injured while working aboard the M/V Tehani ("Tehani"),[1] a vessel owned by debtor Sea Hawaii Rafting, LLC ("SHR"). In 2013, Mr. Barnes filed a suit in admiralty in federal district court (the "maritime case").[2] Mr. Barnes named as defendants the Tehani, SHR, and SHR's sole member, Kristen Kimo Henry.

On November 12, 2014, SHR commenced this bankruptcy proceeding under chapter 7. Shortly before that, Mr. Henry filed a personal bankruptcy proceeding under chapter 13.[3] These filings invoked the automatic stay under section 362 of the Bankruptcy Code.

On September 11, 2015, Mr. Barnes filed a motion for relief from the automatic stay in this case so he could prosecute the maritime case.[4] On November 25, 2015, I granted the motion in part. The stay was terminated to allow the district court to determine Mr. Barnes' maritime lien claim against assets of SHR's

---

[1] Unless the context otherwise requires, I use the words "Tehani" and "vessel" to refer to the vessel and any other property connected with the vessel that may be subject to Mr. Barnes' maritime lien.

[2] *Chad Barry Barnes v. Sea Hawaii Rafting, LLC, et al.*, (Civil No. 13-00002 ACK-RLP, D. Hawaii). This court takes judicial notice of the record in the maritime case pursuant to Fed. R. Evid 201.

[3] *In re Kristin Kimo Henry*, Case No. 14-01475.

[4] Dkt. 31.

U.S. Bankruptcy Court - Hawaii   #14-01520   Dkt # 300   Filed  05/21/18   Page 2 of 19

bankruptcy estate but denied as to enforcement of the lien.[5]

On November 25, 2015, this court disallowed Mr. Barnes' unsecured claim in its entirety because Mr. Barnes did not file a proof of claim.[6]

On December 22, 2015, the district court dismissed all claims against the Tehani on the ground that the court lacked *in rem* jurisdiction over the Tehani.[7]

On March 17, 2016, this court entered an order authorizing the trustee to lease the Tehani and its trailer to Aloha Ocean Excursions, LLC ("AOE") for $500 per month.[8] Mr. Henry was the sole member of AOE, and he personally guaranteed AOE's obligations under the lease.

On May 9, 2016, this court entered an order authorizing the sale of the Tehani and its trailer to AOE for $35,000.[9] The court's order provides that AOE would take the property free and clear of Mr. Barnes' maritime lien. The order does not expressly provide that Mr. Barnes' maritime lien would attach to the proceeds of sale, but that is

---

[5] Dkt. 64.

[6] Dkt. 65.

[7] Maritime case, Dkt. 197.

[8] Dkt. 142.

[9] Dkt. 185. Mr. Barnes appealed from the sale order. He did not obtain a stay pending appeal. The district court dismissed the appeal as moot. Mr. Barnes' further appeal to the Ninth Circuit is pending.

3

the customary practice and this court intended to follow that practice in this case.

On March 28, 2018, the Ninth Circuit reversed the district court's decision,[10] holding that the district court had *in rem* jurisdiction over the Tehani. In addressing the trustee's argument that the appeal was moot due to the sale of the vessel, the Ninth Circuit stated that the automatic stay did not apply to Mr. Barnes' maritime claims, and that the bankruptcy court lacked jurisdiction to adjudicate the maritime lien against the Tehani or to authorize the trustee to sell the Tehani free and clear of Mr. Barnes' maritime lien.

The district court has set a June 12, 2018, trial on the amount of Mr. Barnes' maintenance claim. The court has directed Mr. Barnes to move this court for a determination whether the bankruptcy case or any orders of this court inhibit the prosecution of the maritime case and to report to the district court by May 23, 2018.[11]

On April 20, 2018, Mr. Barnes filed an "Omnibus Motion" in the maritime case which includes forty-five prayers for relief.[12] Among other things, Mr. Barnes asserted claims for attorneys' fees, costs, and damages against the bankruptcy trustee and his counsel.

---

[10] *Barnes v. Sea Hawaii Rafting, LLC*, 2018 WL 1870090 (9th Cir. Mar. 28, 2018).

[11] Maritime case, Dkt. 314.

[12] Maritime case, Dkt. 306.

4

*DISCUSSION*

*Notice of Proposed Abandonment*

On April 12, 2018, the trustee filed a notice of proposed abandonment of any residual interest in the Tehani (but not the proceeds of sale and leasing).[13]

Section 554(a) of the Bankruptcy Code states that "after notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the state."

The statutory requirements for abandonment are met (and Mr. Barnes does not contend otherwise). The Tehani has become burdensome to the estate because whoever owns it will be drawn into the maritime litigation. Because the Ninth Circuit has fixed a minimum amount of Mr. Barnes' lien that exceeds the value of the Tehani, there is no scenario in which the bankruptcy estate could derive any value or benefit from the vessel.

Mr. Barnes objects to abandonment on two grounds.[14]

First, he contends that, if the Tehani is abandoned, it should be abandoned to him. "Abandonment" is simply the formal relinquishment of property from the

---

[13] Dkt. 272.

[14] Dkt. 277.

5

bankruptcy estate.[15] Ordinarily, abandonment restores the status quo that existed just before the bankruptcy; in other words, property is usually abandoned to the debtor. The court may, however, direct that the property be abandoned to anyone with a "possessory interest" in it.[16] But a maritime lien is not a "possessory" interest. "A maritime lien is thus a proprietary interest in a res that is independent of possession . . . ."[17]

Therefore, the Tehani should not be abandoned to Mr. Barnes. But abandonment has no effect on liens and other interests in the abandoned property.[18] Mr. Barnes' maritime liens will be enforceable after abandonment just as if SHR and Mr. Henry had never filed their bankruptcy petitions.

Second, Mr. Barnes argues that the court should not permit abandonment, but rather should require the trustee to recover the Tehani and return it to the control of the district court in the maritime case. Mr. Barnes offers no authority or cogent legal

---

[15] *Catalano v. C.I.R.*, 279 F.3d 682, 685 (9th Cir. 2002).

[16] S. Rep. No. 989, 95th Cong., 2d Sess., at 92 (1978); 5 Collier on Bankruptcy ¶ 554.02[3] (Richard Levin & Henry J. Sommer eds., Lawrence P. King ed., 16th ed.).

[17] Thomas J. Schoenbaum, Admiralty and Maritime Law § 9-1 (5th ed. 2012).

[18] *See* 5 Collier on Bankruptcy ¶ 554.02[3] (Richard Levin & Henry J. Sommer eds., Lawrence P. King ed., 16th ed.).

U.S. Bankruptcy Court - Hawaii   #14-01520   Dkt # 300   Filed  05/21/18   Page 6 of 19

argument in support of this proposition. The whole point of abandonment is to free the estate of property that will not benefit creditors or may result in a net diminution of the estate.[19] The Tehani undoubtedly falls in the category of property that will not benefit the estate. Moreover, because the trustee has made a binding, court-approved agreement to sell the Tehani to AOE, while Mr. Barnes' maritime liens remain enforceable against AOE, Mr. Barnes is at least arguably in a better position than the trustee to "recover" the Tehani.

Therefore, I will approve the proposed abandonment.

### Motion to Transfer Sale Proceeds

On April 13, 2018, Mr. Barnes filed a motion asking the bankruptcy court to transfer either the entire bankruptcy case, or the proceeds of the Tehani currently held by the trustee, to the district court in the maritime case.[20] The trustee filed an opposition to the motion.[21]

The bankruptcy court lacks the authority to transfer bankruptcy cases to the

---

[19] 5 Collier on Bankruptcy ¶ 554.01 (Richard Levin & Henry J. Sommer eds., Lawrence P. King ed., 16th ed.)

[20] Dkt. 274.

[21] Dkt. 291.

7

district court. Congress granted bankruptcy jurisdiction to the district courts[22] and authorized the district courts to "refer" cases and proceedings within that jurisdiction to the bankruptcy court.[23] The district court in this district has made such a reference.[24] Congress further empowered the district court to "withdraw, in whole or in part, any case or proceeding referred under [28 U.S.C. § 157], on its own motion or on timely motion of any party, for cause shown."[25] Congress did not, however, empower bankruptcy courts to return matters to the district court.

In other words, the district court can give work to the bankruptcy court and can take that work away, but the bankruptcy court cannot decline to do work referred by the district court. Mr. Barnes will have to await the district court's decision on his request (included in his Omnibus Motion) to withdraw the reference of this case.

Alternatively, Mr. Barnes asks this court to transfer the proceeds of the Tehani to the district court. This relief is unnecessary. The trustee currently holds the proceeds and may distribute them only upon court order. The trustee can hold the

---

[22] 28 U.S.C. § 1334(a), (b).

[23] 28 U.S.C. § 157(a).

[24] LR 1070.1.

[25] 28 U.S.C. § 157(d).

U.S. Bankruptcy Court - Hawaii   #14-01520   Dkt # 300   Filed  05/21/18   Page 8 of 19

sales proceeds until the district court directs him to disburse some or all of the proceeds in payment of Mr. Barnes' maritime lien[26] (or perhaps directs him to pay the sales proceeds into the registry of the district court). I am confident that the trustee will obey any such order.

Accordingly, I will deny this motion.

### Motions to Proceed in District Court

Mr. Barnes has filed two motions seeking leave to pursue all of his claims in the maritime case pending in the district court. On April 30, 2018, Mr. Barnes filed a motion for leave to proceed against the trustee and his counsel and the property of the estate in Mr. Barnes' maritime lien enforcement action in the district court.[27] The trustee filed a response to the motion.[28] On May 2, 2018, Mr. Barnes filed a motion for expedited relief from the automatic stay or any other order of this court which

---

[26] As I discuss below, AOE may have competing claims to the sale proceeds. Also, not all of the money held by the trustee is sale proceeds. He also holds the proceeds of rental of the Tehani and the proceeds of settlement of a claim that SHR's payment on a credit card was an avoidable preference (dkt. 47). It is not clear that maritime liens attach to rental proceeds, and I can think of no theory on which a maritime lien could attach to proceeds of a claim to recover a preferential transfer of nonmaritime property.

[27] Dkt. 279.

[28] Dkt. 291.

U.S. Bankruptcy Court - Hawaii   #14-01520   Dkt # 300   Filed  05/21/18   Page 9 of 19

would impede his prosecution of the maritime lien enforcement action.[29]

Resolution of these motions requires me to analyze separately the different types of claims asserted in the maritime case.

### *In Rem Claims*

Mr. Barnes has asserted *in rem* maritime lien claims against the Tehani. The Ninth Circuit has decided that the automatic stay does not bar the prosecution of these claims and that only the district court can adjudicate and enforce them. This implies that only the district court can decide what property is subject to Mr. Barnes' maritime lien. Therefore, only the district court can decide whether the maritime lien attaches to some or all of the equipment used with the Tehani, any related governmental permits, the trailer and truck used to tow the Tehani while ashore, or the proceeds of the sale or rental of the Tehani to AOE.[30] It almost goes without

---

[29] Dkt. 285.

[30] The question of whether the maritime lien attaches to the sale proceeds is complicated. When I approved the sale of the Tehani free and clear of liens, Mr. Barnes' maritime lien was removed from the vessel and transferred to the sale proceeds. But the Ninth Circuit held that the bankruptcy court cannot approve a sale of property free and clear of a maritime lien. Therefore, the maritime lien was not removed from the vessel, and AOE did not get what it bargained for (a vessel free of all liens). This raises the question whether the order approving the sale is invalid in toto, or whether only the "free and clear of liens" relief is invalid. In either event, AOE has a good argument for the return of its money: if the sale was invalid altogether, AOE should not have to pay anything; and if the "free and clear" provision is invalid, AOE could argue for rescission of the sale or a price adjustment to reflect the fact that the vessel was not sold free and clear. Therefore, it is not clear that there will be any sale proceeds when all is said and done. And since the buyer's money is at stake, the

10

saying that neither the Bankruptcy Code nor any of my prior orders prevents the district court from carrying out this task.

### *In Personam Claims Against SHR's Bankruptcy Estate*

Second, Mr. Barnes has asserted *in personam* claims against SHR's bankruptcy estate, such as claims under the Jones Act. These claims are not secured by a maritime lien[31] or any other lien, and are thus unsecured claims as a matter of bankruptcy law.

The Ninth Circuit held that maritime lien claims are subject to special treatment and are (essentially) immune from the bankruptcy process. But the Ninth Circuit did not hold or suggest that claims of an injured seaman that are not secured by maritime liens are entitled to better or different treatment than other unsecured claims.

I have previously disallowed all of Mr. Barnes' unsecured claims against SHR's bankruptcy estate because he did not file a proof of claim as all unsecured creditors are

---

buyer would presumably want to be heard on these questions, but the buyer has not yet been joined in the maritime case.

The rental proceeds present the further question whether a maritime lien attaches to such proceeds. I have found no authority on this question.

The district court sitting in admiralty has exclusive jurisdiction to undertake the unenviable task of sorting out these issues.

[31]  The district court so held, dkt. 277-3 at 12 n.10, and the Ninth Circuit did not disturb this part of the district court's ruling.

U.S. Bankruptcy Court - Hawaii   #14-01520   Dkt # 300   Filed 05/21/18   Page 11 of 19

required to do.[32] Mr. Barnes did not appeal from that decision and it remains binding.

Therefore, Mr. Barnes may not assert in the district court any claims against the SHR bankruptcy estate that are not covered by a maritime lien.

### In Personam Claims Against SHR

Mr. Barnes has asserted *in personam*, unsecured claims against SHR. As noted above, the Ninth Circuit held that the automatic stay does not apply to maritime lien claims, but the court's language and logic does not extend to claims that are not secured by a maritime lien.

The automatic stay bars the prosecution of these claims.[33] But the automatic stay generally lasts only until the debtor receives a discharge, the discharge is denied, or the case is closed or dismissed.[34] An artificial entity such as SHR is not entitled to a discharge in a chapter 7 case.[35] Precluding Mr. Barnes from proceeding against SHR now would merely delay the inevitable.

Therefore, I will grant relief from the automatic stay to permit Mr. Barnes to

---

[32] Dkt. 65. *See* Fed. R. Bankr. P. 3002(a) (requiring unsecured creditors to file a proof of claim).

[33] 11 U.S.C. §362(a)(1), (6).

[34] 11 U.S.C. § 362(c)(2)(C).

[35] 11 U.S.C. § 727(a)(1).

12

proceed against SHR (but not against SHR's bankruptcy estate) on all claims.

<u>*In Personam Claims Against Henry and His Bankruptcy Estate*</u>

Mr. Barnes wishes to prosecute *in personam*, unsecured claims against Mr. Henry and his bankruptcy estate. I will deny this request for several reasons.

First, Mr. Barnes has committed a procedural error: he did not file his motion in Mr. Henry's bankruptcy case or give any notice to Mr. Henry's chapter 13 trustee or other creditors.

Second, further litigation in the district court involving Mr. Henry's bankruptcy estate would serve no useful purpose. Mr. Barnes has filed a proof of claim in Mr. Henry's bankruptcy case, and no one has objected to it. Therefore, the claim is allowed as a matter of bankruptcy law and Mr. Barnes does not need to do anything in the maritime case to establish it.

Third, unlike SHR, Mr. Henry will be entitled to a discharge when he completes his chapter 13 plan payments (or if he proves his entitlement to a "hardship discharge").[36] Thus, there is a good chance that Mr. Barnes' unsecured claims against Mr. Henry will be extinguished. There is no reason to compel Mr. Henry or permit

---

[36] 11 U.S.C. § 1328(a), (b). Mr. Barnes never filed a complaint to determine that his debt against Mr. Henry is not dischargeable, and the time for him to do so expired on February 2, 2015. *See In re Kristin Kimo Henry*, Case No. 14-01475, Dkt. 3.

13

Mr. Barnes to litigate those claims now.

Therefore, I will not grant leave to assert *in personam*, unsecured claims against Mr. Henry or his bankruptcy estate.

<u>Claims Against Trustee and His Counsel</u>

Finally, Mr. Barnes wishes to assert claims against the trustee and his counsel. This request runs afoul of two crucial principles.

First, quasi-judicial immunity protects the trustee against Mr. Barnes' claims. When a trustee negotiates a transaction and then carries it out with bankruptcy court approval, the trustee enjoys the same immunity as the bankruptcy judge. "[Q]uasi-judicial immunity attaches to only those functions [of the trustee] essential to the authoritative adjudication of private rights to the bankruptcy estate."[37] Quasi-judicial immunity protects a trustee who leases and sells estate property with court approval.[38]

Second, the *Barton* doctrine applies. That doctrine provides that a plaintiff must obtain authorization from the bankruptcy court before bringing an action in another forum against a trustee for actions the trustee has taken in his official

---

[37] *In re Castillo*, 297 F.3d 940, 951 (9th Cir. 2002); *In Re Cont'l Coin Corp.*, 2009 WL 2589635, at *4 (C.D. Cal. Aug. 21, 2009) (holding that quasi-judicial immunity extends to the trustees' selling of the estate assets).

[38] *See Lonneker Farms, Inc. V. Klobucher*, 804 F.2d 1096 (9th Cir. 1986).

14

U.S. Bankruptcy Court - Hawaii  #14-01520  Dkt # 300  Filed 05/21/18  Page 14 of 19

capacity.[39] The *Barton* doctrine protects, not only trustees, but also their counsel.[40]

Nothing in the Ninth Circuit's decision states or implies that the *Barton* doctrine is inapplicable here. The court of appeals made clear that only the district court can adjudicate Mr. Barnes' maritime claims. But there is no reason to think that bankruptcy trustees are stripped of the usual protections against litigation and personal liability simply because there are maritime claims against the estate.

Mr. Barnes did not seek approval from this court before filing his motion in the district court asserting claims against the trustee and his counsel. Mr. Barnes' actions violate the *Barton* doctrine.

After the trustee filed a motion for sanctions (which I will discuss below), Ms. Barnes filed a motion requesting this court's permission to proceed in district court. For the following reasons, I will deny that request.

A bankruptcy court must consider the following factors to decide whether to

---

[39] *Barton v. Barbour*, 104 U.S. 126, 128 (1881) (a court-appointed receiver of a railroad could not be sued in another forum without leave of the appointing court); *Blixseth v. Brown (In re Yellowstone Mountain Club, LLC)*, 841 F.3d 1090, 1094 (9th Cir. 2016) (*citing In re Crown Vantage, Inc.*, 421 F.3d 963, 970 (9th Cir. 2005)). A district court is considered to be "another forum," requiring leave of the bankruptcy court before a lawsuit can be brought. *In re Kashani*, 190 B.R. 875, 885 (9th Cir. B.A.P. 1995).

[40] *McDaniel v. Blust*, 668 F.3d 153, 157 (4th Cir. 2012); *Lowenbraun v. Canary (In re Lowenbraun)*, 453 F.3d 314, 321 (6th Cir. 2006).

U.S. Bankruptcy Court - Hawaii   #14-01520   Dkt # 300   Filed 05/21/18   Page 15 of 19

allow a party to sue a trustee in another forum despite the *Barton* doctrine:

> (1) whether the acts complained of 'relate to the carrying on of the business connected with the property of the bankruptcy estate,' (2) whether the claims concern the actions of the officer while administering the estate, (3) whether the officer is entitled to quasi-judicial or derived judicial immunity, (4) whether the plaintiff seeks a personal judgment against the officer and (5) whether the claims seek relief for breach of fiduciary duty, through either negligent or willful conduct.[41]

The bankruptcy court may retain jurisdiction even if only one of these factors is satisfied.[42]

All of these factors weigh against granting relief from the *Barton* doctrine. First, the acts Mr. Barnes complains of relate to the carrying on of the business connected with the property of the estate. Second, all of Mr Barnes' claims concern the actions of the trustee while administering the bankruptcy estate. Third, as I explain above, the trustee is entitled to quasi-judicial immunity. Fourth, Mr. Barnes seeks a personal judgment against the trustee.

The bankruptcy court can grant relief from the automatic stay for "cause."[43] The considerations that warrant denial of *Barton* relief also justify denial of automatic

---

[41] *In re Yellowstone Mountain Club, LLC*, 841 F.3d 1090, 1096 (9th Cir. 2016) (*citing In re Kashani*, 190 B.R. 875, 885, 886-87 (9th Cir. B.A.P. 1995)).

[42] *Id.*

[43] 11 U.S.C. § 362(d)(1).

U.S. Bankruptcy Court - Hawaii   #14-01520   Dkt # 300   Filed 05/21/18   Page 16 of 19

stay relief.

Therefore, I will not grant Mr. Barnes leave to assert claims against the trustee or his counsel in district court. (Of course, the district court has exclusive jurisdiction to adjudicate Mr. Barnes' maritime liens and, if the court decides that the lien attaches to some or all of the money in the trustee's hands, to direct the trustee to disburse the money accordingly.)

### Trustee's Motion for Sanctions

On April 27, 2018, trustee filed a second motion for sanctions against Mr. Friedheim and Mr. Barnes.[44] Mr. Barnes filed an opposition to the motion.[45] Mr. Barnes later filed a supplemental response.[46]

The trustee argues that Mr. Barnes' "Omnibus Motion" in the maritime case violated the automatic stay and the *Barton* doctrine. Mr. Barnes and his counsel have effectively admitted that the trustee is right about the violations because, after the

---

[44] Dkt. 278.

[45] Dkt. 293.

[46] Dkt. 295. Mr. Friedheim admits that he made many intemperate, inappropriate, and offensive comments in his initial filings. He is correct. He does not withdraw or change his position on the merits, but he does acknowledge the weaknesses of his arguments. "I understand that it is unlikely that I will be able to succeed on past precedent against the 'in personam' defendants Henry and Sea Hawaii Rafting." Dkt. 295 at 3. His evaluation of his own arguments is also correct.

17

trustee filed his motion for sanctions, they filed motions for relief from the automatic stay and from the *Barton* doctrine.[47]

The bankruptcy court has the power to impose monetary sanctions for "willful" violations of the automatic stay[48] and the *Barton* doctrine.[49]

A stay violation "is willful if the creditor knew of the bankruptcy case and acted intentionally in such a way that the stay was violated."[50] Conduct violating the stay can be willful even if the creditor acted in good faith and reasonably believed that its conduct did not violate the stay.[51]

Mr. Barnes and his counsel clearly knew that SHR and Mr. Henry had filed bankruptcy petitions and invoked the automatic stay, and Mr. Barnes did not file the Omnibus Motion by mistake. His counsel now claims ignorance of the law. But this is

---

[47] I discuss these motions above.

[48] *Knupfer v. Lindblade* (*In re Dyer*), 322 F.3d 1178, 1191 (9th Cir. 2003) (violations of the automatic stay are punishable); *Havelock v. Taxel* (*In re Pace*), 67 F.3d 187, 193 (9th Cir. 1995) (a bankruptcy trustee may recover damages under 11 U.S.C. § 105 if the automatic stay is violated).

[49] *In re EBW Laser, Inc.*, 2012 WL 3490417 (Bankr. M.D.N.C. Aug. 14, 2012); *Unencumbered Assets Trust v. Hampton-Stein* (*In re Nat'l Century Fin. Enterprises, Inc.*), 426 B.R. 282 (Bankr. S.D. Ohio 2010); *Steffen v. Berman* (*In re Steffen*), 406 B.R. 148, 150 (Bankr. M.D. Fla. 2009) (the bankruptcy court may sanction a debtor and his attorney for filing suit against the trustee and his counsel in state court without obtaining permission of the bankruptcy court).

[50] *In re Cordle*, 187 B.R. 1, 4 (Bankr. N.D. Cal. 1995) (*citing Goichman v. Bloom* (*In re Bloom*), 875 F.2d 224, 227 (9th Cir. 1989)).

[51] *Id.*

U.S. Bankruptcy Court - Hawaii   #14-01520   Dkt # 300   Filed  05/21/18   Page 18 of 19

not a defense to an automatic stay or *Barton* violation. Nor is it plausible; Mr. Friedheim has associated with two experienced bankruptcy attorneys during the long course of this case, and he could have learned the law simply by asking either of them (or by doing his own research before, rather than after, he filed the Omnibus Motion).

The trustee's motion does not seek any particular remedy for these violations. I am reluctant to impose a specific sanction now for fear that doing so would simply provoke more litigation and fruitless expense and delay. Therefore, I will hold that Mr. Barnes and Mr. Friedheim willfully violated the automatic stay and the *Barton* doctrine and direct the trustee to file a separate motion if he wishes me to consider imposing sanctions.

**END OF ORDER**

U.S. Bankruptcy Court - Hawaii   #14-01520   Dkt # 300   Filed  05/21/18   Page 19 of 19